**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 23, 2026

By ECF
Honorable Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Belgal v. Genalo*, No. 26-cv-6607 (Gonzalez, J.)

Dear Judge Gonzalez:

This Office represents Respondents in the above-referenced habeas action in which Petitioner Oscar Belgal ("Petitioner") challenges his detention by U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1 ("Petition"). Respondents respectfully write in accordance with Your Honor's Order dated October 16, 2026, which directed Respondents to, *inter alia*, show cause why the Petition should not be granted by October 23, 2026 at 10:00 a.m. In addition, the Court directed Respondents to show cause as to why the Petition should not be granted given this Court's decision in *Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889 (E.D.N.Y. May 22, 2026).

Further to the Court's Order, this Office encloses the following documents received from ICE: Form I-200, Warrant for Arrest of Alien ("I-200"), dated September 18, 2026 (Exhibit 1); I-200 dated October 8, 2026 (Exhibit 2); Form I-862, Notice to Appear ("NTA"), dated October 9, 2026 (Exhibit 3); Form I-286, Notice of Custody Determination ("I-286"), dated October 9, 2026 (Exhibit 4); Form I-826, Notice of Rights and Request for Disposition (Exhibit 5), notice concerning section 236(a) detention decisions (in Spanish) (Exhibit 6); INA § 236(a) Initial Custody Determination Form ("*Velesaca* Form"), dated October 9, 2026 (Exhibit 7); eJustice Criminal Repository Inquiry of Petitioner (Exhibit 8); Notice of Custody Redetermination Hearing (Exhibit 9); Form I-213, Record of Deportable/Inadmissible Alien (Exhibit 10)[1]; Form 589, Property Receipt (Exhibit 11); and Order of the Immigration Judge dated October 15, 2026 (Exhibit 12).[2]

---

[1] Respondents have filed this document under seal. *See* Order to Show Cause dated October 14, 2026 ("the government is directed to file, under seal if necessary, any records, documents, or other information in Petitioner's immigration file").

[2] Information has been redacted from some of the documents for privacy reasons.

## I. Relevant Facts

### A. Background

Petitioner, a native and citizen of the Dominican Republic, entered the United States at an unknown time and place, other than as designated by the Secretary of Homeland Security. Ex. 10 at 3. Petitioner was arrested on December 7, 2023 for allegedly committing New York Penal Law ("Penal Law") § 160.15(2), Robbery in the First Degree. Ex. 11 at 5. The following day, Petitioner was arraigned in Bronx County Criminal Court on charges of Penal Law § 160.05, Robbery in the Third Degree; Penal Law § 155.30(5), Grand Larceny in the Fourth Degree; Penal Law § 120.14(1), Menacing in the Second Degree; Penal Law § 265.01(2), Criminal Possession of a Weapon in the Fourth Degree; Penal Law § 155.25, Petit Larceny; Penal Law § 165.40, Criminal Possession of Stolen Property in the Fifth Degree; Penal Law § 120.15, Menacing in the Third Degree; and Penal Law § 240.26,(1), Harassment in the Second Degree. *Id.* On April 8, 2025, Petitioner pled guilty to Penal Law § 155.30(5), Grand Larceny in the Fourth Degree, a class E felony, and was sentenced to a probation term of five years. *Id.* at 7.

Petitioner was arrested again on August 4, 2025 for allegedly committing Penal Law § 220.41(1), Attempted Criminal Sale of a Controlled Substance in the Second Degree, a class A felony, and Penal Law § 220.39(1), Attempted Criminal Sale of a Controlled Substance in the Third Degree, a class B felony. Ex. 11 at 3. Following various procedural events, on April 29, 2026, Petitioner was arraigned in New York County Supreme Court on charges of Penal Law 220.41(1), Criminal Sale of a Controlled Substance in the Second Degree, a class A felony, and Penal Law § 220.39(1), Criminal Sale of a Controlled Substance in the Third Degree, a class B felony. *Id.* at 4. This criminal matter remains pending. *Id.*

### B. ICE Arrests Petitioner and Exercises its Discretion to Detain Him

On September 18, 2026, ICE issued an I-200 for Petitioner based on "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." Ex. 1; *see* Ex. 10 at 3. That same day, ICE Enforcement and Removal Operations ("ERO") officers conducted a targeted operation to locate and apprehend Petitioner, encountered Petitioner, and attempted to effectuate an arrest. Ex. 10 at 3. However, Petitioner fled from ERO officers and was not apprehended. *Id.*

On October 8, 2026, ERO officers conducted another targeted operation to locate and apprehend Petitioner pursuant to the I-200 dated September 18, 2026. Ex. 10 at 3. At approximately 4:00 p.m., ERO officers located and arrested Petitioner. Following his arrest, Petitioner was transported to the NewYork-Presbyterian Allen Hospital ("Allen Hospital"). *Id.* at 2. Medical personnel at Allen Hospital provided Petitioner medical care and ultimately noted that he was "medically cleared for confinement." Ex. A to Petitioner's Emergency Motion (ECF No. 11-3) at 22 (ECF Pagination).

While at Allen Hospital, ICE was unable to serve the original I-200 due to the active investigation into Petitioner's arrest. Ex. 10 at 2. Accordingly, a second I-200 was issued and served on Petitioner. *Id.*; Ex. 2. At approximately 10:20 p.m., Petitioner was discharged from Allen Hospital and transported to Newark, New Jersey for post-arrest processing and a custody determination. Ex. 10 at 2.[3]

During post-arrest processing, at approximately 12:37 a.m. on October 9, 2026, ICE made the determination to detain Petitioner pursuant to Immigration and Nationality Act ("INA") § 236(a). Ex. 4. At approximately 3:27 a.m., an ICE Supervisory Detention and Deportation Officer issued and served on Petitioner an I-286, which indicated that Petitioner requested review of ICE's custody determination by an Immigration Judge. *Id.* ICE also completed a form at 3:54 a.m. specifying the bases for the custody determination pursuant to a settlement agreement in *Velesaca v. Decker, et al.*, No. 20-CV-1080 (AKH) (S.D.N.Y.), ECF No. 177. Ex. 7. That form indicates that Petitioner failed to establish that he was not a danger to person or property based on, *inter alia*, his arrest for Robbery in the First Degree and conviction of Grand Larceny in the Fourth Degree . *Id.* at 1. At approximately 6:00 a.m., ICE issued and served Petitioner with an I-862. Ex. 3 at 1. Later that day, ICE served the I-200 dated September 18, 2026, on Petitioner. Ex. 1.

Petitioner was admitted to the Metropolitan Detention Center in Brooklyn, New York ("MDC") on October 9, 2026. Declaration of Bruce Bialor (ECF No. 13-3) ¶ 4.

### C. Petitioner's Legal Developments Following His Detention at MDC

On October 13, 2026, the Immigration Court issued a Notice of Custody Redetermination Hearing in Immigration Proceedings, scheduling Petitioner's custody redetermination hearing ("bond hearing"), for October 15, 2026 at 10:00 a.m. Ex. 9. On October 15, 2026, Petitioner withdrew his request for a bond hearing. Ex. 12.

## II. Petitioner's Claims

In his Petition, Petitioner asserts eight claims for relief. Pet. ¶¶ 141-82. In sum, Petitioner contends that he should be released because, in his view: 1) he was subject to a warrantless arrest (Counts 1, 2, and 3); 2) ICE did provide Petitioner with an individualized custody determination

[3] While in New Jersey, Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. *Bergal v. Genalo*, No. 26-cv-8928, ECF No. 1. However, the parties subsequently stipulated to dismiss that matter without prejudice. *Bergal v. Genalo*, No. 26-cv-8928, ECF No. 15.

in a timely manner (Count 4); 3) ICE used excessive force in arresting him (Counts 1, 5, and 6 )[4]; and 4) ICE has ignored his medical needs (Counts 6, 7, and 8).[5]

## III. Discussion

### A. Petitioner is Properly Detained Pursuant to 8 U.S.C. § 1226(a)

Pursuant to 8 U.S.C. § 1226(a), the Government may arrest and detain an alien during his removal proceedings or release him on bond or conditional parole. Section 1226(a) provides, in relevant part, that:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole

8 U.S.C. § 1226(a).

The relevant implementing regulation makes clear that the officers conducting custodial determinations may, in the officer's discretion, release an alien,[6] provided that, *inter alia*, "the

---

[4] Counts 5 and 7 of the Petition, allege violations of, *inter alia*, the Administrative Procedure Act ("APA"), and fail as a matter of law. The Supreme Court has held that where, as here, claims "necessarily imply the invalidity of their confinement," those claims "fall within the 'core' of the writ of habeas corpus and must be brought in habeas." *See Trump v. J.G.G.*, 145 S.Ct. 1003, 1005 (2025) (citation altered).

[5] Respondents respectfully refer to and incorporate their Response in Opposition to Petitioner's Motion Pursuant to *Mapp v. Reno* (ECF No. 13) with respect to Counts 6, 7 and 8, and note that Petitioner has received medical care throughout his detention, including care from non-government providers at outside medical facilities.

[6] The regulations contemplate that an arrest can be made not only "at any time []after" the Notice to Appear ("NTA") for removal proceedings issues but also the alien may be arrested "at the time of issuance" of the NTA. 8 C.F.R. § 236.1(b). An NTA served during post-arrest processing on the same day as an arrest is sufficiently contemporaneous to meet the "at the time of" standard. *See Ramirez v. Genalo*, No. 26-CV-3229, 2026 WL 1815771, at *4 (E.D.N.Y. June 24, 2026) (Gonzalez, J.) (noting that NTA was served on the petitioner in connection with post-arrest processing and concluding that there was "no defect in that process" where petitioner did not "dispute that the government issued an NTA on the day he was arrested and processed"); *Loja v. Acting Field Office Director,* 26-cv-5368, 2026 WL 2321934, at *4 (S.D.N.Y. Aug. 10, 2026) (Koeltl, J.) (rejecting argument that NTA issued several hours after the arrest, within post arrest processing, was improper) (citing *APA v. Arteta,* No. 26-cv-3334, 2026 WL 1587452, at *3

alien must demonstrate to the satisfaction of the officer" that such release "would not pose a danger to property or persons" and "that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8), (d)(1). Although both statute and regulation state "may," "[t]he Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make some level of individualized determination." *Loja,* 2026 WL 2321934, at *5 (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 235 (S.D.N.Y. 2020)).

The statute's text makes clear that the custody determination need not take place prior to or at the exact moment of the arrest. *See* 8 U.S.C. § 1226(a) (setting forth that the decision is whether to "*continue* to detain" the arrested alien or to release the alien on bond or parole) (emphasis added). The statute's use of the phrase "continue to detain" necessarily implies that, at the time the government makes the custody determination, the alien has already been apprehended and detained. *See also Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020) (referring to "post-arrest custody determination" under § 1226(a)). Indeed, the custody determination process involves the alien's presence, as it includes the taking of fingerprints and conducting of an interview, not least to obtain information as to a myriad of categories including family equities, medical issues, and other special vulnerabilities that may impact detention-related decisions.

Once ICE makes the individualized custody determination, 8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing that determination. Section 1226(e) provides that "[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by [ICE] under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Thus, "[a] district court has no authority to review ICE's discretionary determinations made under [Section 1226] or otherwise question their propriety." *Fontanelli as Next Friend of Bernal Garcia v. Francis*, No. 25-cv-07715 (JLR), 2025 WL 2773234, at *4 (S.D.N.Y. Sept. 29, 2025) (explaining that 8 U.S.C. § 1226(e) prevents courts from "second guessing" ICE's custodial determination and that instead a bond hearing was the venue for such challenges); *see also Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 27 (2d Cir. 2019) (Section 1226(e) bars "weighing of evidence and factual findings").[7] "Because a district court has no authority to review ICE's discretionary determinations made under Section 1226(e) or otherwise question their propriety, ICE's determination that Petitioner poses a danger to the community is not subject to review." *Giron v. Warden, MDC Brooklyn*, No. 26-cv-5497, 2026 WL 3015684 at *3 (E.D.N.Y. Oct. 7, 2026) (Gonzalez, J.) (citation altered); *see also Ramirez*, 2026 WL 1815771, at *4 ("ICE's

(S.D.N.Y. Jun. 3, 2026)). Further, an alien may pursue a bond hearing before an immigration judge, in order to be released from detention, even before the NTA has been filed with the immigration court. 8 C.F.R. § 1003.14(a).

[7] Section 1226(e) "'does not preclude challenges to the extent of the Government's detention authority under the statutory framework as a whole'" or "'limit habeas jurisdiction over constitutional claims or questions of law.'" *Batista v. Genalo,* 2026 WL 2169849 at *3 (S.D.N.Y. Jul. 28, 2026) (Vyskocil, J.) (quoting *Velasco Lopez*, 978 F.3d at 850 (quotation omitted)); *but see Mahdawi v. Trump*, 181 F. 4th 103, 126 (2d Cir. 2026) (Menashi, J., concurring) (explaining that petitioner's claim that government's detention discretion was unlawfully exercised in violation of the constitution was "a merits question that § 1226(e) bars the federal courts from considering"), *rehearing en banc granted* (Sept. 3, 2026). Nevertheless, "'[d]ue process' is not a talismanic term which guarantees review in [federal] court of procedural errors correctable by the administrative tribunal." *Batista,* 2026 WL 2169849, at *3 (quoting *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002)), and providing "'the *right* to a hearing before an immigration judge" should ordinarily "satisf[y] due process.'" *Batista,* 2026 WL 2169849, at *3.

procedurally proper, discretionary judgment about Petitioner's danger to the community 'shall not be subject to review,' and the Court may not set it aside") (citing 8 U.S.C. § 1226(e)).[8]

Here, ICE properly detained Petitioner pursuant to 8 U.S.C. § 1226(a). Petitioner was arrested on October 8, 2026 at approximately 4:00 p.m. pursuant to a warrant. Following his arrest, Petitioner was transported to Allen Hospital. After Petitioner was discharged from Allen Hospital at approximately 10:20 p.m. that same day, he was transported to Newark, New Jersey for processing. On October 9, 2026 at approximately 12:37 a.m., ICE conducted an individualized custody determination, determining that Petitioner would be detained. At approximately 3:27 a.m., ICE issued and served on Petitioner an I-286, in which Petitioner indicated that he wanted ICE's determination reviewed by an Immigration Judge ("IJ"). In addition, ICE filled out a *Velesaca* Form, which indicated that Petitioner failed to establish that he did not pose a danger to persons or property, and that ICE determined that he was a danger based on, *inter alia*, his arrest for Robbery in the First Degree and conviction of Grand Larceny in the Fourth Degree. ICE also issued and served on Petitioner the NTA at approximately 6:00 a.m. and served the I-200 dated September 18, 2026.

### B. Petitioner's Arrest Was Not Warrantless

Petitioner contends that Respondents violated the Fourth Amendment and the INA by arresting him without a warrant. Pet. ¶¶ 141-52. However, Petitioner was arrested on October 8, 2026 pursuant to an I-200 executed on September 18, 2026. That warrant outlined that probable cause existed to believe that Petitioner was removable from the United States based upon "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." Ex. 1. Thus, the I-200, issued before Petitioner's arrest, outlined that there was sufficient probable cause to arrest Petitioner. *See, e.g.*, *Ramirez*, 2026 WL 1815771, at *4 (noting that such biometric and record confirmation is a "valid basis for probable cause that the government provided from the outset"). In any event, "release is not the appropriate remedy whenever a violation is found on a petition for habeas corpus." *Gamez-Quintanilla v. Arteta*, 26-cv-6350, 2026 WL 2517655, at *2 (S.D.N.Y. Aug. 26, 2026) (Subramanian, J.) (denying habeas petition notwithstanding violation concerning sequence of warrant for arrest and NTA).

### C. Habeas is Not the Proper Forum for Petitioner's Excessive Force Claim

Petitioner argues at length that "ICE's use of excessive use of force" justifies his release on habeas. Pet. ¶ 179; *see, e.g.*, Pet. ¶¶ 143, 161-62. Although "Petitioner might be able to seek

[8] Respondents note that the circumstances in this case are more closely aligned with those at issue in this Court's decision in *Jum-Cruz v. Venturella*, No. 26-cv-4409, 2026 WL 2254755 (E.D.N.Y. August 5, 2026), than those at issue in *Quille*. In *Jum-Cruz*, the Court denied the petition, ruling that it did not have subject matter jurisdiction to the extent that the petition asked the Court to review ICE's discretionary determinations made during the petitioner's initial custody determination. *Jum-Cruz*, 2026 WL 2254755 at *4. Here, as in *Jum-Cruz*, ICE exercised its discretion to detain Petitioner in consideration of factors that implicated no due process concerns. Specifically, ICE expressly, and reasonably, considered Petitioner's criminal record in assessing whether Petitioner presented a danger to persons or property. *See* Ex. 7.

damages for excessive force . . . a habeas petition is not the proper forum for this excessive force claim." *Lazaro Santos v. ICE Immigration (DHS)*, No. 26-cv-3044, 2026 WL 1725111, at *2 (S.D.N.Y. June 15, 2026) (Subramanian, J.).

### D. Petitioner Has Recourse Even if the Petition is Dismissed

While all of Petitioner's claims fail, Petitioner still has recourse to challenge his detention in the form of a bond hearing before an IJ and, if the IJ's determination proves unfavorable to Petitioner, an appeal to the Board of Immigration Appeals ("BIA"). Indeed, Petitioner had a bond hearing scheduled on October 15, 2026, but chose to withdraw the request for bond and pursue this habeas instead, thus disregarding his administrative remedies. *See* Ex. 12.

Thus, Respondents respectfully submit that the Petition should be dismissed for failure to exhaust administrative remedies. Numerous courts in this Circuit have held that "to the extent [a petitioner] wishes to challenge [his] initial custody determination, [he] must first exhaust the administrative remedies at [his] disposal." *Rojas v. Genalo,* No. 25-cv-6543, 2026 WL 275991, at *1 (E.D.N.Y. Feb. 3, 2026) (Komitee, J.); *Molina v. Lyons*, No. 1:26-CV-03184, 2026 WL 1734618, at *1 (E.D.N.Y. June 11, 2026) (DeArcy Hall, J.) ("It is long established that a habeas petitioner must exhaust the administrative remedies at his disposal before filing a petition for habeas relief."); *Batista*, 2026 WL 2169849, at *5 (declining "to consider Petitioner's claims—constitutional or otherwise—given Petitioner has a non-futile remedy in the form of a bond hearing that could render all his habeas claims moot"); *Marshall v. Arteta*, No. 26-cv-4110, 2026 WL 1724311, at *4 (S.D.N.Y. June 15, 2026) (Vyskocil, J.) (dismissing on exhaustion grounds and noting that "though there is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus, courts generally do require such exhaustion as a prudential matter") (citing *Guzman v. Joyce*, 786 F. Supp. 3d 865, 869 (S.D.N.Y. 2025)); *see also Mahdawi*, 184 F.4th at 134 (Menashi, J., concurring) ("[E]ven if Mahdawi were able ultimately to challenge his detention via habeas in federal court, he would be required first to exhaust his administrative remedies").

Numerous other courts in this Circuit have held similarly. *See, e.g.*, *Castillo Lachapel v. Joyce,* 786 F. Supp. 3d 860, 863 (S.D.N.Y. 2025); *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018); *Fontanelli v. Francis*, No. 25-cv- 7715, 2025 WL 2773234, at *5-8 (S.D.N.Y. Sept. 29, 2025); *Capunay Guzman v. Joyce*, *et al.*, No. 25-cv-4777, 786 F. Supp.3d 865, 870 (S.D.N.Y. June 17, 2025); *Roman v. Decker*, No. 20-cv-3752, 2020 WL 4273823, at * 7 (S.D.N.Y. July 24, 2020); *Paz Nativi v. Shanahan*, No. 16- cv-8496, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017)). The exhaustion requirement "aims to provide the agency with a chance to correct its own errors, 'protect[ ] the authority of administrative agencies,' and otherwise conserve judicial resources by 'limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary.'" *Capunay Guzman*, 786 F.Supp.3d at 869 (*quoting Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.)). Thus, those challenging their detention under Section 1226(a) to first exhaust administrative remedies. *See, e.g.*, *Rojas*, 2026 WL 275991, *1 (denying habeas petition in light of failure to exhaust).

Here, Petitioner, who is being detained pursuant to 8 U.S.C. § 1226(a), has not availed himself of administrative remedies available pursuant to § 1226(a)—specifically, a two-level administrative review process that includes a bond hearing before an IJ (*see* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)) and an appeal to the BIA should the IJ conclude that he should not be released, or the IJ has set a bond amount that he believes is too high (*see* 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1003.38, 1236.1(d)(3)). *See Monterosa v. Decker*, No. 20-cv-02653, 2020 WL 1847771, at *3 (S.D.N.Y. Apr. 11, 2020) ("After ICE makes an initial detention decision, any person who is detained has the right to request a bond hearing before an Immigration Judge."); *Michalski*, 279 F. Supp. 3d at 496 (finding that a bond hearing is the appropriate avenue for petitioner's request for release from detention where "as opposed to challenging the length of his detention, [petitioner] essentially challenges the arrest and detention under § 1226(a) without any evaluation of legal justification as unconstitutional"). As the court in *Castillo Lachapel* explained, "If the immigration judge releases [Petitioner] on bond, his [habeas] petition would be moot . . . And even if the immigration judge denies bond, [Petitioner]'s petition could be mooted if the [BIA] reverses that determination." 786 F. Supp. 3d at 864. (internal quotations and citation omitted). Thus, "[b]ecause [Petitioner]'s [potential] bond hearing may provide him with the relief that he seeks— *i.e.*, his release," the Court should require that Petitioner exhaust the administrative avenues available to him pursuant to § 1226(a) before seeking judicial relief. *See id.*

Nor do any of the recognized exceptions to exhaustion apply here. A district court may in its discretion excuse exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.2d at 62 (quotation omitted). Numerous courts in this Circuit have also found that none of these exceptions apply where, as here, an IJ or the BIA could release a habeas petitioner detained under 8 U.S.C. § 1226(a) on bond. *See, e.g.*, *Castillo Lachapel*, 786 F. Supp. 3d at 864-65; *Capunay Guzman*, 786 F. Supp.3d at 870; *Monterosa*, 2020 WL 1847771 at *6-*7; *Roman*, 2020 WL 4273823, at *7.

With respect to the first exception, as explained above, Petitioner has available administrative remedies—a bond hearing with an IJ *and* appeal of the IJ's decision, if adverse, to the BIA. *See Chen v. Maldonado*, No. , 2026 WL 2455274 at *4 (E.D.N.Y. Aug. 21, 2026) (Gonzalez, J.) ("Petitioner's overly generalized arguments about administrative exhaustion do not persuade the Court that administrative review, including a request for a bond hearing before an IJ, would not offer a realistic opportunity for relief") (citation altered); *Castilla Lachapel*, 786 F. Supp. 3d at 864 (describing the two levels of administrative review available to petitioner). "Because [Petitioner]'s [potential] bond hearing may provide him with the relief that he seeks—i.e., his release—this Court concludes in the exercise of its discretion that [Petitioner] must exhaust these avenues before seeking judicial relief." *Id.* (internal quotations and citations omitted). *See Michalski*, 279 F. Supp. 3d at 496 (finding that a scheduled bond hearing "scuttles" petitioner's habeas petition because the immigration judge could release him on bond making his habeas petition moot); *Paz Nativi*, 2017 WL 281751, at *2 ("The pendency of a BIA appeal that could potentially moot [petitioner's] habeas petition counsels for the Court to stay its hand until the exhaustion of administrative review in the name of preserving scarce judicial resources and avoiding the possibility of duplicative or conflicting rulings").

The second exception is also inapplicable. Notwithstanding his insistence otherwise, as previously discussed, Petitioner cannot show irreparable harm at this time. He has been detained for just over two weeks, receiving medical care, and originally had a bond hearing scheduled, but which was cancelled in light of Petitioner withdrawing his request for a bond hearing. *See Capunay Guzman*, 786 F. Supp. at 871 (where petitioner had been detained for approximately nineteen days "'[t]he risk of prolonged detention'—as opposed to actual prolonged detention—'does not constitute an irreparable injury that excuses the prudential exhaustion requirement'") (quoting *Roman*, 2020 WL 4273823, at *8); *cf. Michalski*, 279 F. Supp. 3d at 496 (petitioner's "claim that prolonged detention constitutes an irreparable injury that may excuse exhaustion has been rejected by courts in this District").

Similarly, as to the third exception, Petitioner has not shown that a bond hearing would be futile. *See Cabral v. Decker*, 331 F. Supp. 3d 255, 263 n. 6 (S.D.N.Y. 2018) ("[T]he question of whether the petitioner's yet-to-happen bond hearing complies with due process is not before this Court."). The government is detaining Petitioner pursuant to Section 1226(a), which is not a mandatory detention statute and permits bond.

With respect to the fourth exception, the "[m]ere existence of a constitutional issue . . . does not create an automatic exception to an exhaustion requirement." *Monterosa,* 2020 WL 1847771, at *5. "Thus, when applying this exception, 'courts will endeavor to avoid deciding a constitutional issue if the case might be resolved on a narrower factual basis.'" *Capunay Guzman*, 786 F. Supp. at 871 (quoting *Monterosa*, 2020 WL 1847771, at *5). In any event, the process that is due to Petitioner is a hearing before an IJ and an appeal before the BIA; he is not being deprived of that process, except insofar as he chooses to reject that recourse in favor of federal court. Accordingly, the Petition should be dismissed for failure to exhaust administrative remedies.

Accordingly, Respondents respectfully request that the Court deny the Petition. Respondents thank the Court for its time and consideration of this submission.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Nathan Shi
NATHAN SHI
Assistant U.S. Attorney
(718) 254-6013

cc: (by ECF)
Elyssa Williams, Esq.
Perry Hall McAninch, Esq.
*Counsel for Petitioner*