**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 3, 2026

By ECF
Honorable Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Belgal v. Genalo*, No. 26-cv-6607 (Gonzalez, J.)

Dear Judge Gonzalez:

This Office represents Respondents in the above-referenced habeas action in which Petitioner Oscar Belgal ("Petitioner") challenges his detention by U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1. Respondents respectfully write in accordance with the Court's Order dated October 29, 2026, in which the Court granted Respondents the opportunity to respond to Petitioner's Notice of Supplemental Authority (ECF No. 24) by 4:00 p.m. on November 3, 2026.

## I. *P.A.G.C. v. Genalo*

In his Notice of Supplemental Authority, Petitioner provided this Court with a copy of Judge Reyes' recent decision in *P.A.G.C. v. Genalo*, No. 26-cv-6545, 2026 WL 3216694 (E.D.N.Y. Oct. 27, 2026) (Reyes, J.). Although Petitioner made no explicit argument in relation to providing this authority, presumably, Petitioner seeks to attack the Form I-862, Notice of Appearance ("NTA") issued in this matter. In brief, *P.A.G.C.* stands for the proposition that an NTA must be filed with the immigration court prior to the arrest of an alien. *See P.A.G.C.*, 2026 WL 3216694, at *7 ("This Court holds only that the period during which section 1226(a) authorizes arrest and detention begins where the statute says it beings—upon filing of the NTA with the immigration court").

## II. Post-Processing NTAs Comply with Federal Regulations

Respondents respectfully submit that *P.A.G.C.* was incorrectly decided, and that this Court should adhere to its line of decisions declining to grant petitions for writs of habeas corpus "where ICE conducted its initial custody determination and served the NTA on the day of the arrest" subsequent to taking those petitioners into custody. *Gutama v. Maldonado, Jr.*, No. 26-cv-6556, 2026 WL 3152059, at *2 (E.D.N.Y. Oct. 21, 2026) (Gonzalez, J.) (citing *Jum-Cuz v. Venturella*, No. 26-cv-4409, 2026 WL 2254755, at *2 (E.D.N.Y. Aug. 5, 2025) (Gonzalez, J.) and *Ramirez v. Genalo*, No. 26-cv-3229, 2026 WL 1815771, at *4 (E.D.N.Y. Jun. 24, 2026) (Gonzalez, J.)).

### A. Section 1226(a) is Silent with Respect to NTA and Arrest Warrant Timing

Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The statute provides the Attorney General and the Department of Homeland Security ("DHS") with broad discretionary authority to arrest and detain an alien during removal proceedings. *See* 8 U.S.C. §§ 1226(a)(1) (DHS "may continue to detain the arrested alien" during the pendency of removal proceedings); *Nielsen v. Preap*, 586 U.S. 392, 409 (2019) (highlighting that "subsection (a) creates authority for anyone's arrest or release under § 1226—and it gives the Secretary broad discretion as to both actions"). Section 1226(a) fails to speaks to the timing of the issuance of a warrant and NTA. Neither do Section 1229(a) nor 1229a.

### B. Federal Regulations are Consistent with NTAs Issued During Post-Arrest Processing

The regulation implementing Section 1226(a) provides that, "[*a*]*t the time of* issuance of the notice to appear, *or* at any time thereafter ... the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1) (emphasis added). "At the time of" generally means "contemporaneous." *See, e.g.*, *Soroban Cap. Partners LP v. Comm'r of Internal Revenue*, No. 25-2079, 2026 WL 2751819, at *10 (2d Cir. Sept. 17, 2026) (using terms "at the time of" and "contemporaneous" interchangeably). "At the time of" does not in all circumstances, require that the NTA be issued before the arrest. "To conclude otherwise would violate the 'basic canon of statutory interpretation . . . to avoid readings that render statutory [or regulatory] language surplusage or redundant.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 196 (2d Cir. 2016); *see also Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007) (refusing to adopt reading that "would render the regulation entirely superfluous"; "we have cautioned against reading a text in a way that makes part of it redundant").

Furthermore, interpretation of "at the time of" to permit issuance of an NTA during post-arrest processing is the best, and most reasonable, one. *See Ramirez* 2026 WL 1815771, at *4 (noting that the NTA was issued and served on the petitioner during post-arrest processing and concluding that there was "no defect in that process" where petitioner did not "dispute that the government issued an NTA on the day he was arrested and processed"); *cf. Penaranda Arevalo v. Bondi*, 130 F.4th 325, 335-37 (2d Cir. 2025) (holding that § 1229(a)(1)'s NTA requirements are a non-jurisdictional claim-processing rule); *Chery v. Garland*, 16 F.4th 980, 986-87 (2d Cir. 2021) (holding that IJs retain jurisdiction over removal proceedings despite commencement with a non-compliant NTA). Indeed, in a case such as this, in order to file an NTA with the immigration court to commence removal proceedings before the Executive Office for Immigration Review ("EOIR"), ICE utilizes an electronic portal maintained by EOIR for docketing initial hearings. Declaration of Merlin Marcellin ("Marcellin Decl.") ¶ 4 ICE provides pedigree and other information, as well as whether or where the alien is to be detained to EOIR. EOIR then issues a hearing notice, which provides ICE personnel the location, date, and time of the hearing. *Id.* ¶ 7. In general, the determination of where the alien can be detained, and by extension, where the removal proceedings will be docketed, is made during post-arrest processing where the alien's risk-classification is determined, pedigree information, as well as any medical issues, or other detention-related consideration, can be assessed, and bedspace has been approved by a detention facility. *Id.* While

ICE may issue an NTA prior to having an alien in custody without this information, that NTA typically cannot be filed with the immigration court, and, in general, the location, date, and time fields cannot be completed, until after the arrest. *Id.* ¶ 8. Because of these operational and procedural requirements and considerations, ICE generally issues NTAs during post-arrest processing. *Id.* If, as *P.A.G.C.* holds, an NTA must precede a warrant in all circumstances for the warrant to be valid, but the information required to complete a valid NTA can only be obtained during post-arrest processing, it would effectively preclude immigration arrests pursuant to administrative warrants in those circumstances. Given that immigration arrests pursuant to administrative warrant, however, "have the sanction of time," *Abel v. United States*, 362 U.S. 217, 230 (1960), that conclusion curtailing their use is incorrect.

Moreover, the Supreme Court has held that, in order to comply with Section 1229, an NTA must include specific information, including the time and place of removal proceedings, where that information generally hinges on knowledge of the alien's address. *Pereira v. Sessions*, 585 U.S. 198, 199 (2018) (notice to appear must, *inter alia*, designate the specific time and place of removal proceedings, at least for purposes of triggering the stop-time rule set forth in 8 U.S.C. § 1229b(b)(1)(a)). If an NTA must precede a warrant in all circumstances for the warrant to be valid, but the information required to complete a valid NTA can only be obtained during post-arrest processing, then the district court's order would effectively preclude immigration arrests pursuant to administrative warrants in those circumstances. In addition, Forms I-200, Warrant for Arrest of Alien ("I-200"), contain multiple options as to the basis of the officer's probable cause to believe the alien is removable form the United States. However, only one of these options is the execution of an NTA, supporting a reading of the regulation which does not require that in all circumstances the issuance of an NTA prior to the issuance of, or arrest pursuant to, an I-200. And, finally, the alien may pursue a bond hearing before an immigration judge, in order to be released from detention, even before the NTA has been filed with the immigration court. 8 C.F.R. § 1003.14(a).

As discussed in greater detail in Respondents' Response to the Court's Order to Show Cause (ECF No. 18), Petitioner was arrested at approximately 4:00 p.m. on October 8, 2026, pursuant to a valid I-200. ECF No. 18 at 2. During post-arrest processing the next morning, at approximately 6:00 a.m., ICE issued and served an NTA on Petitioner.[1] *Id.* at 3. This was uploaded to the EOIR Courts & Appeals System at approximately 6:15 a.m. that same morning. Marcellin Decl. ¶ 9. Accordingly, this Court should find, as it has in various aforementioned cases, that the NTA in this matter, issued after Petitioner's arrest, complied with both the statutory scheme of Section 1226(a), and federal regulations.

## III. Even If Procedurally Irregular, Petitioner is Not Entitled to his Requested Relief as He Has Incurred No Prejudice

Even assuming that an NTA issued less than 24 hours after arrest was procedurally irregular, Petitioner incurred no prejudice, and is therefore not entitled to his requested relief on that basis. To obtain relief based on the violation of a regulation, a petitioner must establish that

---

[1] Post-arrest processing occurred the morning of October 9, 2026 because Petitioner was taken to the NewYork-Presbyterian Allen Hospital for medical care following his arrest and was not discharged until approximately 10:20 p.m. on October 8, 2026. ECF No. 18 at 2-3.

the regulation "is promulgated to protect a fundamental right derived from the Constitution or a federal statute." *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993). If that standard is not met, *i.e.* "when there is a regulation which relates to less fundamental, agency-created rights and privileges," agency action should be invalidated "only upon a showing of prejudice to the rights sought to be protected by the subject regulation." *Id.* "[S]equencing does not implicate a statutory right because the statute is silent on the sequencing of a warrant-based arrest and the issuance of an NTA." *Gagea v. Maldonado*, No. 26-cv-4817, 2026 WL 2859032, at *2 (E.D.N.Y. Sept. 23, 2026); *see, e.g.*, *Gutama*, 2026 WL 3152059, at *2 ("ICE issued a valid I-200 warrant before arresting Petitioner [ ] and issued an NTA and initial custody determination a few hours after taking him into custody . . . like in *Gagea*, Petitioner has shown no prejudice stemming from ICE's issuance of an NTA several hours after his arrest"); *Grigorenko v. Maldonado*, 26-cv-4772, ECF No. 17 (E.D.N.Y. Oct. 20, 2026) (Gujarati, J.) ("Petitioner does not explain how he would have been better off had the NTA issued earlier the same day – nor does the record otherwise reflect any prejudice to Petitioner"). Instead, the regulation simply sets out, at most, "agency-created rights and privileges," *Waldron*, 17 F.3d at 518, governing the sequencing of internal operations. The regulation concerns the arrest's timing relative only to the "issuance," not service, of the NTA. *See* 8 C.F.R. § 236.1(b)(1) (distinguishing sources of authorization for issuing versus serving a warrant of arrest). Petitioner's filings in this action did not provide any reason to conclude that he suffered prejudice, or was worse off, because there was approximately 14 hours between the arrest and the issuance of the completed NTA, many of which involved Petitioner receiving medical treatment at a third-party hospital.[2]

Accordingly, Respondents respectfully submit that, even if this Court reverses its position with respect to the timing of the issuance of NTAs, Petitioner cannot show prejudice entitling him to his requested relief.

Respondents thank the Court for its time and consideration of this matter.

---

[2] Additionally, claims under the Fourth and Fifth Amendments do not provide a basis for habeas release where sufficient grounds for continued detention exist. *See Leiva Garcia v. Shanahan*, 2026 WL 1631608, at *2 (E.D.N.Y. June 6, 2026) (Komitee, J.) ("[P]etitioner's Fourth Amendment challenge is not a basis for the grant of a writ of habeas corpus. Petitioner cites no authority for his contention that a Fourth Amendment violation (if one occurred) would entitle him to release. And the substantial weight of authority is to the contrary."); *Lainez v. Blanche*, 2026 WL 1758249, at *2 (E.D.N.Y. June 18, 2026) (Conley, J.) (concluding that the court "need not reach the merits" of petitioner's Fourth Amendment challenge to his warrantless arrest because that challenge did not provide a basis for habeas relief); *see also Leiva Garcia*, 2026 WL 1631608, at *2 ("[T]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding") (quoting *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984)); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (explaining that a prisoner "is not to be discharged for defects in the original arrest or commitment" where sufficient grounds for continued detention exist (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Nathan Shi
NATHAN SHI
Assistant U.S. Attorney
(718) 254-6013

cc: (by ECF)
Elyssa Williams, Esq.
Perry Hall McAninch, Esq.
*Counsel for Petitioner*