THE LEGAL AID SOCIETY

Immigration Law Unit
49 Thomas St. 5th Floor
New York, NY 10013
www.legal-aid.org

Twyla Carter
Attorney-in-Chief
Chief Executive Officer

Adriene L. Holder
Attorney-in-Charge
Civil Practice

Deborah Lee
Attorney-in-Charge
Immigration Law Unit

November 4, 2026

**BY ECF**
The Honorable Hector Gonzalez
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Belgal v. Genalo*, 26-cv-06607

Dear Judge Gonzalez:

On behalf of Petitioner Oscar Belgal, we write to reply to the government's letter dated November 3, 2026. ECF 26. Respondents provide their letter in response to Petitioner's Notice of Supplemental Authority: namely, District Judge Ramón E. Reyes's decision in *P.A.G.C. v. Genalo*, No. 26-CV-6545, 2026 WL 3216694 (E.D.N.Y. Oct. 27, 2026). ECF 24.

Through their letter, Respondents not only raise new arguments in response to one of Petitioner's original claims to relief,[1] which *P.A.G.C.* discusses, but also suggest their intentional noncompliance with clear statutory requirements. Specifically, Respondents now contend that Immigration and Customs Enforcement ("ICE") could not have obtained information necessary to file a Notice to Appear ("NTA") and commence removal proceedings against Petitioner prior to his arrest. Respondents further contend that to comply with the Supreme Court's holding in *Pereira v. Sessions*, 585 U.S. 198 (2018), ICE *must* conduct arrests prior to filing a NTA. *Id.* at 3. For the reasons below, the Court should reject Respondents' attempts to reimagine plain statutory text and order Petitioner's immediate release.

## I. As *P.A.G.C.* Affirms, the Statutory Text Unequivocally Requires that Removal Proceedings Have Been Commenced Prior to an Arrest by Administrative Warrant, and Respondents' Representations Cannot and Do Not Alter that Requirement.

As Petitioner has argued throughout these proceedings, the plain language of § 1226 provides that civil immigration detention is only permissible if related to *pending* removal proceedings. And because removal proceedings are initiated by the filing of an NTA with the immigration court, an NTA must necessarily precede *any* immigration arrest pursuant to an administrative warrant.[2] *P.A.G.C.* affirms this elemental fact, despite Respondents' attempts to evade the statute's binding requirements.

Section 1226(a) provides: "On a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed

[1] ECF 1 ¶¶ 9–10; *see also* ECF 23 at 9–14. And as Respondents note, Petitioner did not raise argument in his Notice of Supplemental Authority.
[2] As previously noted, *see* ECF 23 at 6, Respondents do not claim that ICE possessed the authority to conduct a warrantless arrest of Petitioner.

from the United States." "This provision prescribes how ('on a warrant') and when ('pending a decision') [a noncitizen] may be arrested and detained. The phrase 'pending a decision' presupposes the existence of some proceeding in which a removal decision will be made," and "[t]he proceeding contemplated . . . is a removal proceeding under [8 U.S.C.] § 1229a(c)(1)(A)." *P.A.G.C.*, 2026 WL 3216694, at *3. Thus, as *P.A.G.C.* confirms, the "link" between arrest authority and pending removal proceedings "is evident," and the "statutory meaning is thus plain and unambiguous." *Id.* at *3–4. The statutory history, moreover, "confirms that detention authority has always been tied to the adjudication of deportability, and that the point at which the adjudication begins has followed the adjudicator." *Id.* at *5.[3] Respondents attempt to evade this elemental statutory requirement on the grounds that to comply would be logistically impossible. But not only are Respondents' representations insufficient to alter the clear will of Congress, they are simply false—both in this matter and in relation to their arrest and detention practices more broadly.

### A. **Respondents' Claim that Pedigree Information Necessary to Complete an NTA Cannot Be Obtained Prior to Arrest Is Unavailing and Contradicts Their Prior Representations in this Matter.**

Respondents suggest that ICE could not have served an NTA on Petitioner prior to its violent and illegal arrest, as it could not have obtained his address prior to the arrest itself. ECF 26-1 ¶ 3.[4] But not only do Respondents fail to identify *why* ICE generally cannot obtain address information for individuals it seeks to detain, but, more importantly, they also have *already* represented to this Court that they were in possession of such information prior to this arrest. Indeed, Respondents have maintained that, from its very initiation, ICE's arrest was a "targeted operation" conducted near Petitioner's home as a result of his prior criminal arrests. ECF 18-10 at 2. And moreover, Respondents' *own evidence* confirms that they were in possession of Petitioner's address at least as early as September 18, 2026, when Respondents claim to have attempted a separate targeted arrest. ECF 18 at 2. Indeed, through both of the purported Forms I-200, Officer Cuni swears that ICE determined that Petitioner was removable via "biometric confirmation of [his] identity and a records check of federal databases . . . by themselves or in addition to other reliable information[.]" ECF 18-1, 18-2; *see also* ECF 26-1 (addressing "DHS records and databases"). And the RAP sheet that Respondents have filed in these proceedings, obtained via such a database, confirms that ICE was in possession of Petitioner's address prior to its arrest. *See* ECF 18-13; *see also* ECF 18-10 (reflecting that ICE confirmed the address listed on Petitioner's RAP sheet as correct). Therefore, Respondents concede that they had the information required to properly file an NTA and initiate removal proceedings prior to Petitioner's arrest.

---

[3] Respondents' claim that the formatting of their Forms I-200 support an alternative reading, *see* ECF 26 at 3, is unavailing, as the statutory text—not Respondents' pattern and practice—is determinative of ICE's arrest and detention authority. *See Pereira*, 585 U.S. at 219 (internal quotation omitted) ("At the end of the day, given the clarity of the plain language, we apply the statute as it is written.").

[4] Notably, M. Marcellin does not provide specific information pertaining to the processing of Oscar's arrest or NTA, and only provides generalized information "based on [his] personal knowledge as someone who is responsible for overseeing post-arrest processing of [noncitizens], and [his] review of ICE and DHS records and databases." Id. ¶ 2. The declaration therefore adds no information regarding Petitioner's arrest beyond what Respondents have previously provided.

## B. ***Pereira* Does Not Compel a Contrary Reading, and Indeed Affirms the Proposition that ICE Has the Ability to Issue NTAs prior to Arrest.**

Respondents' new claim is further foreclosed by *Pereira*, through which the Supreme Court addressed the statutory requirements relating to NTAs. 585 U.S. 198. Respondents argue that because ICE cannot obtain address information of the individuals it seeks to charge prior to arrest, and because an address is determinative of the date and location of any hearing in removal proceedings[5]—information the Supreme Court found required for the filing of a valid NTA—then *Pereira* requires that issuance of a warrant precede the filing of an NTA. ECF 26 at 3. This claim is unsupported not only because ICE *could and did* obtain Petitioner's address information prior to arrest, but also because *Pereira* makes explicit that while ICE must include such information on a valid NTA, 8 U.S.C. § 1229(a)(2)(A) "also enables the Government to 'change or postpone the time and place of the removal proceedings." 585 U.S. at 203–04 (internal quotation marks omitted); *see also id*. at 217 ("The Government, for its part, argues that the 'administrative realities of removal proceedings' render it difficult to guarantee each noncitizen a specific time, date, and place for his removal proceedings. That contention rests on the misguided premise that the time-and-place information specified in the notice to appear must be etched in stone."). Thus, to the extent that Respondents argue that an NTA "typically cannot be filed with the immigration court, and, in general, the location, date, and time fields cannot be completed, until after the arrest," ECF 26 at 3, Respondents are flatly incorrect.[6]

# II. Respondents' Admissions to Willful Violation of Statutory Restrictions on their Arrest and Detention Authority Demand Petitioner's Release from Custody.

Through their letter and declaration, Respondents have freely admitted to ICE's wholesale violation of the most elemental restrictions on its arrest and detention authority. Accordingly, Petitioner's detention is the very definition of "unlawful from [ ] inception," such that his immediate release is required. *Hernandez Lazo v. Noem*, 818 F.Supp.3d 328, 349 (E.D.N.Y. 2026); *see also* ECF 1 ¶¶ 139–40; ECF 23 at 14–16; *P.A.G.C.*, 2026 WL 3216694, at *11–12. Because the requirement that an arrest be made pursuant to a pending NTA is not an "agency-created right[] and privilege," *see Gutama Gutama v. Maldonado*, No. 26-CV-06556 (HG), 2026 WL 3152059, at *2 (E.D.N.Y. Oct. 21, 2026) (quoting *Gagea v. Maldonado*, No. 26-cv-4817, 2026 WL 2859032, at *2 (E.D.N.Y. Sept. 23, 2026)), but rather a statutory obligation that, if interpreted otherwise, would "sound[] constitutional alarms," *P.A.G.C.*, 2026 WL 3216694, at *6–7, Petitioner respectfully submits that, contrary to this Court's prior holding, habeas relief is warranted irrespective of any prejudice from Respondents' violations. *See also* ECF 23 at 13–14.[7]

---

[5] Respondents further claim that ICE cannot determine the intended site of an individual's detention without information that can only be obtained after arrest. *See* ECF 26-1 ¶ 6. But Respondents do not identify why such information cannot be obtained prior to arrest, via the same database checks described above.

[6] Respondent's citation to *Abel v. United States*, 362 U.S. 217, 230 (1960), is misplaced. ECF 26 at 3. In *Abel* the Court explicitly stated that because the legality of the administrative warrant in those proceedings had not been challenged below, the Court would not reach whether the warrant was indeed valid. 362 U.S. at 230. Accordingly, *Abel* has no bearing on these proceedings.

[7] Moreover, because a valid NTA "implicates [a] fundamental due process right[]"—notice—prejudice need not be demonstrated. *Walters v. Ashcroft*, 291 F.Supp.2d 237, 247 (S.D.N.Y. 2003); *cf. United States v. Nunez*, 375 F.Supp.3d 232, 241 (E.D.N.Y. 2018) (internal citations omitted) ("The Court finds that neither *Waldron* nor *Nolasco* forecloses a finding that the due process associated with discretionary relief under 8 C.F.R. § 1003.25(b) is a fundamental right.").

Perhaps more importantly, Respondents' disregard of the law *clearly* prejudices Petitioner. Throughout these proceedings, Respondents have downplayed the severity of the harm they caused Petitioner, conveniently omitting any reference to ICE's brutal arrest and claiming that the choice to shoot him, detain him, transport him, and complete paperwork, only then to formally issue, serve and file the NTA for removal proceedings did not prejudice him. But had Respondents taken their duty to follow the law seriously, instead of blatantly disregarding it at every step of the arrest process, *none* of the concrete harms that Petitioner has suffered would have come to pass, starting with Respondents' decision not to provide Petitioner with notice of immigration proceedings or a valid warrant before appearing in plain clothes and, without identifying themselves, opening fire on his vehicle, where his five-year-old son sat. Thus, Respondents disregarded, or, worse, willfully chose not to follow, the required statutory and regulatory process, and to the extent Petitioner is required to show prejudice, the prejudice in this case is extreme. *See* ECF 23 at 24–26.

We thank the Court for its consideration of this submission.

Respectfully submitted,

/s/ *Perry Hall McAninch*

Perry Hall McAninch
Elyssa N. Williams
THE LEGAL AID SOCIETY
Immigration Law Unit
49 Thomas Street, Fifth Floor
New York, NY 10013
T: (929) 219-6697
F: (646) 304-0876
pmcaninch@legal-aid.org
ewilliams@legal-aid.org

*Counsel for Petitioner*

cc: Assistant U.S. Attorney Nathan Shi (by ECF)
*Counsel for Respondents*