UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSCAR BELGAL<br><br>Petitioner,<br>v.<br><br>KENNETH GENALO, Director, New York Field Office, U.S. Immigration and Customs Enforcement, *et al.*,<br><br>Respondents. | **MEMORANDUM & ORDER**<br>26-CV-6607 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

On October 8, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner Oscar Belgal in Manhattan's Marble Hill neighborhood. Petitioner was ultimately transferred to the Metropolitan Detention Center in Brooklyn ("MDC"), where he remains detained. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Petition").[1] For the reasons that follow, his Petition is DENIED.

## BACKGROUND[2]

Petitioner is a citizen of the Dominican Republic who initially entered the United States without inspection in or around 2021. *See* ECF No. 1-2 at 1; ECF No. 1 ¶ 58; ECF No. 18 at 2.

Approximately two years after he entered the country, Petitioner was arrested for allegedly committing robbery in the first degree, in violation of New York Penal Law ("NYPL")

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2] The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

§ 160.15(2). ECF No. 18 at 2. He was arraigned in Bronx County Criminal Court on robbery, larceny, menacing, criminal possession of a weapon, criminal possession of stolen property, and harassment charges. *See id.* Four months after his arraignment, Petitioner pled guilty to grand larceny in the fourth degree (NYPL § 155.30(5)) and was sentenced to five years of probation. *Id.* In early August 2025, Petitioner was arrested for attempted criminal sale of a controlled substance in the second and third degrees. *See id.* He was arraigned on those two charges on April 29, 2026; the matter remains pending. *Id.*

On September 18, 2026, ICE issued a Form I-200 (Warrant for Arrest of Alien; the "First Warrant") for Petitioner "based on 'biometric confirmation of the [Petitioner's] identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that [Petitioner] either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.'" ECF No. 18 at 2. Later that day, ICE agents conducted a targeted operation to locate and apprehend Petitioner; they ultimately "encountered Petitioner, and attempted to effectuate an arrest." *Id.* Their attempt was unsuccessful and Petitioner "was not apprehended." *Id.*

Weeks later—on October 8, 2026—ICE agents "conducted another targeted operation to locate and apprehend Petitioner." *Id.* ICE agents encountered Petitioner while he was driving his son home from school. *See id.*; ECF No. 1 ¶¶ 60–62. Agents approached Petitioner's parked car with their guns drawn and, at or around the moment Petitioner attempted to pull out of his parking spot, agents fired multiple shots into Petitioner's car. ECF No. 1 ¶¶ 61–63, 65–70. Petitioner suffered injuries to his shoulder and neck. *Id.* ¶¶ 68, 70. Petitioner's son was not physically injured. Injured, Petitioner exited his vehicle and ICE agents quickly handcuffed him. *Id.* ¶ 73; ECF No. 18 at 2. Petitioner sat just outside his car, leaning against the driver's side

door, until New York City Police Department officers arrived at the scene, provided him with immediate medical care, and arranged for him to be transported to a nearby hospital. *See* ECF No. 1 ¶¶ 73–75; ECF No. 18 at 2.

"[D]ue to the active investigation into Petitioner's arrest," ICE agents were "unable to serve [Petitioner with] the [First Warrant]." ECF No. 18 at 3. In light of the investigation, ICE issued a second Form I-200 (the "Second Warrant") and served Petitioner while he was still at the hospital. *See id.*

At approximately 10:00 p.m. on October 8, 2026, healthcare providers at the hospital "medically cleared [Petitioner] for confinement." ECF No. 18 at 2 (quoting ECF No. 11-3 at 22 (Exhibit A to Petitioner's Emergency Motion for Bond and Release)). He was transferred to New Jersey "for post-arrest processing and a custody determination." *Id.* at 3. Shortly after midnight on October 9, 2026, ICE "made the determination to detain Petitioner pursuant to Immigration and Nationality Act ('INA') § 236(a) [8 U.S.C. § 1226(a)]" because "Petitioner failed to establish that he was not a danger to person or property based on, *inter alia*, his arrest for Robbery in the First Degree and conviction of Grand Larceny in the Fourth Degree." *Id.* Hours later the agents completed an INA § 236(a) Initial Custody Determination Form. *See id.* at 3; ECF No. 18-7 (INA § 236(a) Initial Custody Determination Form, dated October 9, 2026). That form indicates that ICE determined that Petitioner failed to establish he is not a danger to the community because he: (1) "was arrested by the NYPD for Robbery 1st Degree: Forcible Theft Armed with a Deadly Weapon"; (2) "was convicted of Grand Larceny 4th: Property Taken from Person"; (3) "is an alleged member of the Trinitario Street Gang"; and (4) "is a person of interest in a 2025 shooting of an Off Duty [Customs and Border Patrol ("CBP")] Officer." ECF No. 18-7 at 1.

Early the next morning—around 6:00 a.m. on October 9, 2026—ICE issued and served Petitioner with a Form I-862 (Notice to Appear; "NTA"). ECF No. 18 at 3; ECF No. 18-3 (NTA). Then, "ICE served the [First Warrant] on Petitioner." ECF No. 18 at 3; ECF No. 18-1. ICE filed the NTA with "the [Executive Office for Immigration Review ("EOIR")] Courts & Appeals System at approximately 6:15 a.m. that same morning." ECF No. 26 at 3. And, ultimately, Petitioner was transferred to the MDC, where he remains detained. ECF No. 18 at 3.

Approximately a week after his arrest, Petitioner, through counsel, initiated the instant action by filing a petition for a writ of habeas corpus. *See generally* ECF No. 1. Among other things, Petitioner states that his Petition should be granted because: (1) the government violated the Fourth Amendment in their arrest and detention of Petitioner; (2) he was arrested without a valid warrant; (3) the government failed to meet the standard for a warrantless arrest under 8 U.S.C. § 1357(a)(2); (4) the government did not conduct an individualized custody determination prior to or contemporaneous with Petitioner's detention; (5) his arrest and detention violate the *Accardi* doctrine and the Administrative Procedure Act ("APA") because ICE departed "from its own policy to not use excessive and deadly force"; (6) the government's use of deadly force and "deliberate indifference to serious medical needs" violate Petitioner's substantive due process rights; and (7) the government "violated the Rehabilitation Act, the *Accardi* doctrine and the APA" by denying Petitioner medical care.[3] *Id.* ¶¶ 141–75.

That same day, the Court issued an Order to Show Cause, directing the government to show cause "why the petition should not be granted, and why Respondents should not be ordered

[3] The Court does not address Petitioner's eighth cause of action—requesting release pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001)—in this Order because it already decided that issue in connection with his separate Emergency Motion for Bond and Release Pursuant to *Mapp v. Reno*. *See* Oct. 23, 2026, Text Order.

to immediately release Petitioner from detention, in light of the Second Circuit's holding in *Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026) *cert. granted sub nom. Rhoney v. Barbosa da Cunha*, No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026), and directing the government to "address whether Petitioner is being detained pursuant to 8 U.S.C. § 1225 or § 1226." *See* Oct. 14, 2026, Text Order.

The government filed its response on October 23, 2026, in which it sets forth its position that: "Petitioner is properly detained pursuant to 8 U.S.C. § 1226(a)." ECF No. 18 at 4 ("Response"). The government argues Petitioner's arrest and detention is proper because: (1) "[o]nce ICE makes the individualized custody determination, 8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing that determination"; (2) his arrest "was not warrantless"; (3) "habeas is not the proper forum for Petitioner's excessive force claim"; and (4) "Petitioner still has recourse to challenge his detention in the form of a bond hearing before an [Immigration Judge ("IJ")] and, if the IJ's determination proves unfavorable to Petitioner, an appeal to the Board of Immigration Appeals ('BIA')." *See id.* at 5–9. Petitioner filed his reply four days later. *See* ECF No. 23 ("Reply"). On October 29, 2026, Petitioner submitted a notice of supplemental authority and attached Judge Reye's decision in *P.A.G.C. v. Genalo*, No. 26-cv-6545, 2026 WL 3216694 (E.D.N.Y. Oct. 27, 2026). *See* ECF No. 24. The government filed a response to that notice on November 3, 2026, *see* ECF No. 26, and Petitioner filed a reply to the government's submission the next day, *see* ECF No. 28.

## LEGAL STANDARD

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241,

"authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Particularly relevant here is the Second Circuit's recent decision in *Barbosa da Cunha*, 175 F.4th 61. There, the Circuit held that Section 1226(a), not Section 1225(b)(2)(A), applies to noncitizens like Petitioner who entered the United States without inspection and admission and were not apprehended at or near the border at the time of entry. *Barbosa da Cunha*, 175 F.4th at 86, 96.

**DISCUSSION**

Petitioner argues that his detention is unlawful and that his Petition should be granted because: (1) ICE arrested him without a statutorily valid warrant; (2) ICE failed to conduct an individualized custody determination; (3) a procedural due process analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976) favors his release; (4) his excessive force claims are cognizable in this action; (5) he continues to suffer physical pain from the actions of ICE; and (6) exhaustion is not statutorily required here.[4] *See generally* ECF No. 1; ECF No. 23. The Court addresses these arguments in turn.

---

[4] The Court "may excuse exhaustion where certain exceptions apply, including when (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026). Here, the fourth exception applies because Petitioner asserts that his detention under Section 1226 absent an

## I. The Government Arrested Petitioner Pursuant to a Valid Warrant

Petitioner's primary challenge to his arrest and detention is that he was arrested without a statutorily valid warrant. *See* ECF No. 1 ¶¶ 83–95; ECF No. 23 at 4–18. This challenge is largely a function of timing. Petitioner argues that ICE arrested him without a valid warrant because the First Warrant (executed on September 18, 2026) is "*void ab initio*, as no valid NTA existed at the time of the arrest." ECF No. 1 ¶ 88. Additionally, Petitioner argues that ICE failed to satisfy the requirements for a warrantless arrest under 8 U.S.C. § 1357(a)(2) and, therefore, lacked probable cause to arrest Petitioner without a warrant. *See id.* ¶¶ 90–95.

As a preliminary matter, Petitioner's claim that his arrest was warrantless is belied by the record evidence. In fact, as noted *supra*, two warrants were issued for Petitioner's arrest. The First Warrant, executed September 18, 2026, indicates that ICE determined there was probable cause to arrest Petitioner based on: "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." ECF No. 18-1. The Second Warrant, executed October 8, 2026, indicates probable cause existed based upon the same biometric confirmation. ECF No. 18-2. Stated otherwise, because Petitioner does not contest that warrants existed, but rather that the warrants that did exist are invalid, his argument that the government did not satisfy the requirements of a warrantless arrest under Section 1357(a)(2) is immaterial.

individualized assessment violates his due process rights. ECF No. 1 at 45. Because the Court agrees with Petitioner that he was not required to exhaust his administrative remedies before filing his Petition, it does not rely on an exhaustion analysis in this Order.

Turning to the crux of Petitioner's challenge, he argues he is entitled to immediate release because the warrants that were issued are invalid due to their timing vis-à-vis the NTA.[5] Petitioner has a point; 8 C.F.R. § 236.1 provides, in relevant part, that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). In other words, "the regulations require that removal proceedings are pending or at least that a Notice to Appear was served at the time of arrest." *See Aparicio v. Genalo*, No. 26-cv-1411, 2026 WL 698872, at *5 (E.D.N.Y. Mar. 12, 2026).

That sequencing error, however, is not so consequential as to warrant the writ. *See Ramirez v. Genalo*, No. 26-cv-3229, 2026 WL 1815771, at *4 (E.D.N.Y. June 24, 2026) (denying habeas relief where the "government issued an NTA on the day [petitioner] was arrested and processed" and there was no defect in his initial custody determination). On this point, the Court is persuaded by the courts' reasoning in *Gagea v. Maldonado*, No. 26-cv-4817, 2026 WL 2859032 (E.D.N.Y. Sept. 23, 2026); *Loja Loja v. Acting Field Off. Dir.*, No. 26-cv-5368, 2026 WL 2321934 (S.D.N.Y. Aug. 10, 2026); and *Gamez-Quintanilla v. Arteta*, No. 26-cv-6350, 2026 WL 2517655 (S.D.N.Y. Aug. 26, 2026).

In *Gagea*, the petitioner, a native and citizen of Romania, was arrested "for overstaying his visa based on an arrest warrant known as a Form I-200"; ICE "issued a formal charging document known as a 'Notice to Appear' later that morning; and made an 'initial custody

---

[5] The Court need not address the validity of the Second Warrant given its conclusion that the First Warrant was sufficient to arrest Petitioner. Regardless of the Second Warrant's validity, the government's decision to issue and serve it while the First Warrant was valid is, at worst, a procedural error that did not affect Petitioner's rights.

determination' of whether petitioner should be released on bond that same day." 2026 WL 2859032, at *1. Judge Kovner noted that the petitioner was "correct that immigration authorities violated a regulation when they issued the NTA in his case approximately four hours after [his] arrest, rather than before it," but that he was "not entitled to release on that basis." *Id.* at *2. The court explained:

> An alien may obtain relief based on the violation of a regulation without a showing of prejudice only if the regulation "is promulgated to protect a fundamental right derived from the Constitution or a federal statute." *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993). Otherwise, "when there is a regulation which relates to less fundamental, agency-created rights and privileges," agency action should be invalidated "only upon a showing of prejudice to the rights sought to be protected by the subject regulation." *Ibid.*

*Id.* Because the petitioner "offered no persuasive argument that the sequencing rule embodied in Section 1236.1(b)(1) 'is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' or that he suffered prejudice from its violation," Judge Kovner concluded that petitioner failed to "give any reason to conclude that he suffered prejudice from an approximately four-hour delay in the NTA's issuance." *Id.* at *2–3 (quoting *Waldron*, 17 F.3d at 518).

Similarly, in *Loja Loja*, ICE arrested the petitioner at approximately 4:45 p.m. pursuant to a Form I-200, "then served the Form I-200 on Mr. Loja Loja, advised him of its contents in Spanish, and brought him to 26 Federal Plaza in Manhattan for processing and an initial custody determination." 2026 WL 2321934, at *1. "During processing at 26 Federal Plaza, ICE issued and served on Mr. Loja Loja a Form I-862, Notice to Appear." *Id.* at *2. The petitioner sought habeas relief arguing, among other things, that "ICE violated 8 C.F.R. § 236.1(b)(1) by arresting him pursuant to the Form I-200 *before* issuing an NTA." *Id.* at *3 (emphasis in original). Judge Koeltl explained that "[t]he question is not whether the noncitizen has a fundamental interest at stake—every detained noncitizen does—but whether the violated regulation was promulgated to

protect such an interest." *Id.* at *4 (citing *Waldron*, 17 F.3d at 517–18). The court explained that 8 C.F.R. § 236.1(b)(1) was not "promulgated to protect a fundamental right derived from the Constitution or a federal statute," because that provision "does not confer a right, allocate a burden, or constrain the substantive grounds for detention." *Id.* (citing *Waldron*, 17 F.3d at 517–18). Therefore, "[t]o establish his entitlement to relief, Mr. Loja Loja must [have] show[n] . . . that he suffered some harm that he would not have suffered had the NTA issued before ICE arrested him." *Id.* The court concluded that "Mr. Loja Loja never explain[ed] how ICE's purported sequencing error prejudiced his liberty interest when the temporal gap was at most several hours." *Id.*

In *Gamez-Quintanilla*, immigration authorities "issued a Form I-200 warrant for the arrest of petitioner . . . . The next day, [ICE] authorities arrested him, and [a] notice to appear . . . wasn't issued until *after* [petitioner's] arrest." 2026 WL 2517655, at *1 (emphasis in original). Judge Subramanian concluded that the government violated 8 C.F.R. §§ 236.1(b)(1) and 1236.1(b)(1)—the sequencing regulations at issue in *Gagea*, *Loja Loja*, and in this case—but explained that:

> In this context, where the alleged violation concerns the sequencing of the issuance of administrative documents by agency personnel, it's unclear why release would be appropriate. After all, even if the Court were to order [petitioner's] release, the Government could just go through the steps to re-arrest him, with the NTA already having been issued this time around. "Law and justice" can't possibly "require" unconditional release in these circumstances.

*Gamez-Quintanilla*, 2026 WL 2517655, at *2 (citing 28 U.S.C. § 2243; and *Loja Loja*, 2026 WL 2321934, at *3–5). Despite the sequencing issue, Judge Subramanian concluded that "defects in an original warrant for arrest do not necessarily render the ensuing detention and proceedings void; instead, 'if sufficient ground for his detention by the government is shown, [the petitioner]

is not to be discharged.'" *Id.* (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923)).

Such is the case here. Yes, Petitioner was arrested pursuant to a warrant *before* he was issued an NTA and the NTA was not issued until approximately 14 hours after his arrest. *See* ECF No. 18 at 2, 3; ECF No. 26 at 3, 4. Yes, the government violated the sequencing regulations set forth in 8 C.F.R. §§ 236.1(b)(1) and 1236.1(b)(1). *See* ECF No. 1 ¶ 28; ECF No. 23 at 4–5, 14 n.6. Yes, the delay between arrest and issuance of the NTA is more than in other cases. *Compare* ECF No. 26 at 4 (conceding "there was approximately 14 hours between the arrest and the issuance of the completed NTA") *with Gagea*, 2026 WL 2859032, at *2–3 (discussing "approximately four-hour delay in the NTA's issuance") *and Loja Loja*, 2026 WL 2321934, at *4 (noting a "temporal gap [of] at most several hours").[6] And yes, Petitioner has a fundamental interest at stake, "every detained noncitizen does." *Loja Loja*, 2026 WL 2321934, at *4. However, because Petitioner has failed to give the Court reason to conclude that he suffered prejudice from the hours' delay between his arrest and the issuance of the NTA, the Court is persuaded by Judge Kovner's decision in *Gagea*, 2026 WL 2859032, at *2–3, Judge Koeltl's decision in *Loja Loja*, 2026 WL 2321934, at *4, and, because "even if the Court were to order [Petitioner's] release, the Government could just go through the steps to re-arrest him, with the NTA already having been issued this time around," the Court is persuaded by Judge Subramanian's decision in *Gamez-Quintanilla*, 2026 WL 2517655, at *2. Stated otherwise, Petitioner failed to show prejudice from the incorrect sequencing of his arrest and issuance of the

---

[6] The Court notes that the 14-hour gap in this case is a product of Petitioner's injuries and his time in the hospital. For the avoidance of doubt, those extenuating circumstances by no means excuse the sequencing error. That said, the unique circumstances of this case do, as a matter of fact, explain why the time between arrest and issuance of the NTA in this case is longer than the delays in *Gagea* and *Loja Loja*.

NTA, and he cannot show the requisite prejudice because sufficient grounds have been shown to justify his detention. Moreover, if the Court released Petitioner because of a lapse in sequencing when the other process Petitioner received was constitutionally adequate, the government would be required to go through only slightly different steps to re-arrest him and place him in the same position he is in now. There is little sense in requiring this sort of empty exercise. *See id.*; *see also Gagea*, 2026 WL 2859032, at *3 ("Underscoring the absence of prejudice, if petitioner were released, it would appear that agents could simply rearrest him immediately in compliance with the sequencing regulations since an NTA was long ago issued—returning him to the position he is in now.").

Moreover, aside from speculations about the sufficiency of the government's basis for probable cause, Petitioner does not identify any evidence to support a conclusion that the government did not have "biometric confirmation" of the Petitioner and record confirmation that he either lacked immigration status or was otherwise "removable under U.S. immigration law," or that the warrant was fraudulent. *See* ECF No. 18-1; ECF No. 18-2. Simply put, the government is not reconstructing a basis for probable cause, it is relying on an independent basis it indicated at the time the warrants were issued. Without any challenge to the sufficiency of those grounds, Petitioner fails to contest a valid basis for probable cause that the government provided from the outset. And, because any technical error concerning the timing of the NTA is not enough to independently render the warrant invalid, Petitioner fails to provide a sufficient basis for the Court to determine that the First Warrant is invalid.[7]

[7] The Court finds the decisions in *Gagea*, *Loja Loja*, and *Gamez-Quintanilla*, more persuasive than the recent decision in *P.A.G.C. v. Genalo*, No. 26-cv-6545, 2026 WL 3216694 (E.D.N.Y. Oct. 27, 2026) In *P.A.G.C.*, the court concluded that, because an arrest before an NTA was filed with the immigration court is a statutory violation, as opposed to a regulatory

## II. The Government Conducted an Adequate Initial Custody Determination

Petitioner's second argument—that his Petition should be granted because the government "did not conduct an individualized review prior to the decision to detain [him] under § 1226(a), in violation of statutes, regulations, and due process," ECF No. 23 at 18—is unsupported by the record. Indeed, the government demonstrated in its Response that "[o]n October 9, 2026 at approximately 12:37 a.m., ICE conducted an individualized custody determination, determining that Petitioner would be detained." ECF No. 18 at 6; *see also* ECF No. 18-7 (initial custody determination form indicating ICE's determination). Specifically, ICE determined that Petitioner should be detained because he: (1) "was arrested by the NYPD for Robbery 1st Degree: Forcible Theft Armed with a Deadly Weapon"; (2) "was convicted of Grand Larceny 4th: Property Taken from Person"; (3) "is an alleged member of the Trinitario

---

one, the cost benefit analysis undertaken in *Gagea*, *Loja Loja*, and *Gamez-Quintanilla* does not apply. *See* 2026 WL 3216694, at *11.

The Court is not persuaded by *P.A.G.C.*'s interpretation of "pending," because the decision overreads the relevant language. Specifically, *P.A.G.C.* relies on the adjective sense of the word. *Compare* 2026 WL 3216694, at *3 ("A decision is 'pending' when it remains undecided and awaits decision.") *with PENDING (adj.)*, Black's Law Dictionary (12th ed. 2024) ("Remaining undecided; awaiting decision"). However, Section 1226(a) uses "pending" as a preposition governing the object, *viz.* "*pending a decision* on whether the alien is to be removed." *See* 8 U.S.C. § 1226(a) (emphasis added). Thus, a better reading of Section 1226(a) is that a noncitizen "may be arrested and detained [while awaiting or until] a decision on whether the alien is to be removed" is made. *See PENDING (prep.)*, Black's Law Dictionary (12th ed. 2024). Stated otherwise, the question is whether Petitioner is detained *while awaiting or until* a removal decision. The issuance of a warrant—based on probable cause that Petitioner lacked lawful status or was otherwise removable—initiates the procedural processes that culminate in that decision, so the government's conduct is consistent with that mandate. So, because Section 1226(a) is silent with respect to the sequence of the NTA and warrant, the Court looks to the applicable regulations—8 C.F.R. §§ 236.1(b)(1) and 1236.1(b)(1)—which speak to that point directly.

When all that is taken together, it's clear that ICE's sequencing lapse is not a statutory violation; it is a regulatory one. Accordingly, the cost benefit analysis undertaken in *Gagea*, *Loja Loja*, and *Gamez-Quintanilla* is the appropriate prism through which the sequencing lapse in this case should be analyzed.

Street Gang"; and (4) "is a person of interest in a 2025 shooting of an Off Duty CBP Officer." ECF No. 18-7 at 1.

Notwithstanding the record, Petitioner argues that the initial custody determination is invalid because ICE determined Petitioner should be detained before completing the INA § 236(a) Initial Custody Determination Form. *See* ECF No. 23 at 22. That argument overreads the government's Response. The government demonstrates that "at approximately 12:37 a.m. [on October 9, 2026] ICE conducted an individualized custody determination, determining that Petitioner would be detained. At approximately 3:27 a.m., . . . ICE filled out [an INA § 236(a) Initial Custody Determination] Form, which indicated that Petitioner failed to establish that he did not pose a danger to persons or property, and that ICE determined that he was a danger." ECF No. 18 at 6. This is not a "concession" that "only *after* making the custody determination did [the government] engage in the [] processing and some version of individualized review," as Petitioner argues. *See* ECF No. 23 at 22 (emphasis in original). At most, it is a concession that ICE filled out paperwork after conducting an individualized review of Petitioner based on the available evidence. There is no reason to suspect that ICE's discretionary determination is not particular to Petitioner's circumstances, especially where, as here, the reasons ICE provided in the initial custody determination form are specific to Petitioner. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025) (requiring and "individualized custody determination" and noting that the Supreme Court has interpreted similar provisions of the INA to require the government make only "some level of individualized determination" (quoting *I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 194 (1991)).

In effect, Petitioner's arguments concerning the adequacy of his initial custody determination are merely a challenge to the *result* of his initial custody determination. That challenge is precisely of the sort over which this Court lacks jurisdiction.

Indeed, Section 1226(e) provides that "discretionary judgment regarding the application of [Section 1226] shall not be subject to review," and that "[n]o court may set aside any action or decision . . . regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003) *accord Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("§ 1226(e) precludes an alien from 'challeng[ing] a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.'"). Of course, Section 1226(e) does not bar the Court from "assess[ing] whether and how correct procedures were applied at all . . . and ultimately, whether [Petitioner]'s detention comports with due process." *See Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). But the Court has assessed the relevant procedures applied here and, based on the available record, concludes that Petitioner's detention pursuant to Section 1226, the initial custody determination, and other procedural aspects comport with due process.

As the Court previously noted, at bottom, Petitioner is challenging the *result* of his initial custody determination. And, because "[a] district court has no authority to review ICE's discretionary determinations or otherwise question their propriety," *Fontanelli as Next Friend of Bernal Garcia v. Francis,* No. 25-cv-7715, 2025 WL 2773234, at *4 (S.D.N.Y. Sept. 29, 2025), ICE's determination that Petitioner is a danger to the community is not subject to review, *see Lopez Benitez*, 795 F. Supp. 3d at 494 (expressly not reaching whether government's "proffered basis in its decision to detain [petitioner] is substantively inadequate in some respect," and noting

the government "has wide latitude with respect to its discretion in this regard that is not subject to second-guessing by this Court").

### III. A *Mathews* Analysis does not Favor Petitioner's Release

For similar reasons, Petitioner's argument that a procedural due process analysis under *Mathews* favors his release fails. He is correct that the first *Mathews* factor weighs in his favor because Petitioner's interest in "being free from imprisonment" is "the most significant liberty interest there is." *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). But once the Court's inquiry turns to "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335, the scales no longer tip in his favor.

The second *Mathews* factor does not weigh in Petitioner's favor because ICE's initial custody determination was sufficiently contemporaneous with his arrest and sufficiently individualized to satisfy the requirements of Section 1226(a). *See Gopie v. Lyons*, No. 25-cv-5229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (noting "judges have interpreted [Section 1226(a)] this way: before or contemporaneous with detaining a noncitizen, there must be a custody determination" and collecting cases). In other words, because ICE applied the procedures required by Section 1226(a), the risk of erroneous deprivation of his liberty interest is low. And, given the Court's conclusion that the government complied with its statutory mandate, the probable value of "additional or substitute procedural safeguards" is low, if it exists at all.

The same goes for the third factor. It is well settled that "the Attorney General's discretion to detain individuals under [8 U.S.C. § 1226(a)] is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration

proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025). Here, the government, after an individualized assessment of Petitioner's unique circumstances, determined that Petitioner failed to demonstrate he is not a danger to the community. *See* ECF No. 18-7. Accordingly, the government has demonstrated it has a significant interest in his continued detention.

When taken together, the *Mathews* analysis works in Petitioner's favor only with respect to the first factor; the other two factors weigh in the government's favor. On balance then, Petitioner's argument that *Mathews* favors his release fails.

## IV. Habeas is not the Proper Vehicle for Petitioner's Excessive Force Claims

Petitioner argues that his claims concerning "ICE's unlawful use of deadly force are cognizable in this action." *See* ECF No. 23 at 31–35. As an independent basis for habeas relief, he asserts that ICE's "illegal use of force" violated his due process rights. *Id.* at 31. He further contends that ICE's conduct was arbitrary and capricious under the APA and renders his detention unlawful. ECF No. 1 at 51–53; ECF No. 23 at 31. But regardless of whether or not ICE used excessive force when arresting Petitioner, that conduct cannot serve as a basis for habeas relief.

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Section 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In other words, "[t]he question presented on an application for a writ of habeas corpus is *the present legality of the restraint of liberty* to which the petitioner is subjected." *Hammond v. Lenfest*, 398 F.2d 705, 712 (2d Cir. 1968) (emphasis added).

Petitioner's excessive force claim, by contrast, does not go to the legality of his detention. "[T]he issue of whether an arrest is lawful is distinct from that of whether excessive force was used in conducting that arrest." *Rosado v. Soriano*, No. 16-cv-3310, 2021 WL 5910384, at *2 (S.D.N.Y. Dec. 13, 2021); *see also Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (lawfulness of an arrest and excessive force are distinct concepts). Because ICE's alleged use of excessive force does not go to whether Petitioner is "in custody in violation of the Constitution or laws . . . of the United States," his claim is not cognizable under Section 2241(c)(3).

Nor is Petitioner's excessive force claim saved by its reliance on the APA. Petitioner argues that ICE's use of force violated internal agency guidelines. ECF No. 1 at 36, 41, 51–53. As an initial matter, it is doubtful that Petitioner's APA claim is cognizable under Section 2241. The APA permits review only of "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. Habeas relief is an adequate alternative remedy. *Trump v. J. G. G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring); *Gagea v. Maldonado*, No. 26-cv-4817, 2026 WL 2859032, at *4 (E.D.N.Y. Sept. 23, 2026) ("In the absence of any explanation from petitioner in any of his filings of why habeas is an inadequate remedy, petitioner's APA claim is dismissed."); *cf. Zhuo v. Mayorkas*, No. 23-cv-5416, 2024 WL 4309232, at *3 (E.D.N.Y. Sept. 26, 2024) (holding that an alternative remedy need not be meritorious to be adequate). Additionally, the Supreme Court recently held that challenges to confinement "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump*, 604 U.S. at 672; *Ajay v. Maldonado*, No. 26-cv-0676, 2026 WL 1045420, at *2 (E.D.N.Y. Apr. 17, 2026) (dismissing APA claim where petitioner sought a writ of habeas corpus under Section 2241).

Additionally, even if cognizable, Petitioner's APA claim is merely an attempt to repackage his excessive force arguments. According to Petitioner, ICE violated the APA by "failing to adhere to clear policy around the use of force." ECF No. 1 at 36. This argument fails for the same reason as before: ICE's alleged violation of these internal guidelines does not go to the underlying legality of Petitioner's detention. Indeed, courts that have recognized APA claims on habeas review have done so when the petitioner "challeng[ed] the procedures" justifying detention, not the level of force used. *Orellana v. Francis*, No. 25-cv-4212, 2025 WL 2822640, at *5 (E.D.N.Y. Oct. 3, 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 421 n.27 (S.D.N.Y. 2025).

Although Petitioner's excessive force claim does not entitle him to habeas relief, he is not foreclosed from seeking relief under a different vehicle. Of course, the Court expresses no opinion on the merits of any such claim.[8]

---

[8] For the avoidance of doubt, Petitioner's argument that ICE violated the APA and Rehabilitation Act by failing to provide him with adequate medical care while in detention, ECF No. 1 at 41–45, fails for the same reason as before: whether Petitioner's medical care is adequate goes to the conditions of detention, not the validity of custody. *Andreenko v. Holder*, No. 09-cv-8535, 2010 WL 2900363, at *5 (S.D.N.Y. June 25, 2010) ("The law is well-settled that a writ of habeas corpus is not the appropriate legal vehicle for seeking relief based on the conditions of detention.").

The Second Circuit has recently held in the 28 U.S.C. § 2254 context "that, at least where a petitioner alleges unconstitutional conditions that are irremediable but for the release of the petitioner, such conditions of confinement are cognizable under habeas." *Diaz v. Kopp*, 146 F.4th 301, 307–08 (2d Cir. 2025). Here, however, Petitioner's complaints about the conditions of his confinement are all remediable. In fact, as the Court explained in its October 23, 2026, Order, Petitioner has received "consistent evaluation" at the MDC since being detained. Medical staff have concluded that "Petitioner does not show signs of a deteriorating condition." October 23, 2026, Text Order. The government's submissions "show that he has received necessary and appropriate care and that his medical condition is stable." *Id.* Petitioner's claim is not cognizable under habeas. *See Coleman v. New York State Dep't of Corr. & Cmty. Supervision*, No. 25-cv-1216, 2025 WL 3003451, at *5 (N.D.N.Y. Oct. 27, 2025) (similar).

## CONCLUSION

For these reasons, Petitioner's arrest and detention is consistent with the Due Process Clause of the Fifth Amendment, and his Petition for a writ of habeas corpus, ECF No. 1, is DENIED.

For the avoidance of doubt, nothing in this Order shall be construed as a determination of Petitioner's ability to seek an individualized bond hearing before an IJ in the future. If Petitioner is entitled to such a hearing, the IJ shall meaningfully consider alternatives to detention and Petitioner's ability to pay if a monetary bond is set, and the government will have the burden of showing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. *See J.C.G. v. Genalo*, No. 24-cv-8755, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases where courts ordered that the government bear the burden of demonstrating by clear and convincing evidence that discretionary detention was justified); *see also Mendoza Raymundo v. Almodovar*, No. 26-cv-02304, 2026 WL 1480372, at *5 (E.D.N.Y. May 27, 2026) (same).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
November 20, 2026